[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14253

_____

BIA No. A79-346-047

MISAEL USSA,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 21, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and ALBRITTON,[*] District
Judge.

PER CURIAM:

---

[*] Honorable W. Harold Albritton, III, United States District Judge for the Middle District
of Alabama, sitting by designation.

Misael Ussa, a Colombian national, petitions for review of the final order of the Board of Immigration Appeals, which affirmed the denial of Ussa's application for asylum, withholding of removal, and relief under the Convention Against Torture. Substantial evidence supports the decision of the board. We deny the petition.

## I. BACKGROUND

Ussa is a former resident of Bogotá, Colombia. From 1989 until 2000, he worked as a crewman on Celebrity cruise ships. His job required him to work six continuous months on a ship each year. During the six-month period from December 1999 until July 2000, Ussa worked on a ship that docked at several ports in the United States and Canada. A crewman's visa allowed Ussa to enter the United States during this period. In July 2000, Ussa's ship docked in Vancouver, Canada. Ussa traveled from Vancouver to San Francisco, where he stayed with friends for several days. He then traveled to the Bahamas, where he obtained a tourist visa that permitted him to enter the United States and remain until February 2, 2001.

On August 3, 2000, Ussa returned to the United States, where he remained after his tourist visa expired. On July 3, 2001, Ussa filed an application to withhold removal and for asylum. On July 17, 2001, the Immigration and Naturalization Service issued a Notice to Appear that charged that Ussa was

subject to removal.  On January 14, 2005, Ussa appeared before an Immigration Judge, who conducted an evidentiary hearing.  Ussa admitted his removability.

In support of his requests that removal be withheld and for asylum, Ussa testified that in 1993 he became involved with the Colombian Liberal Party.  He organized meetings and participated in electoral campaigns, including those of his cousin, a Liberal Party politician.  In 1997 Ussa began to receive frequent telephone calls in which he was told that his life would be in danger if he continued to participate in politics.

In October 1999, Ussa organized and attended a meeting with 50 peasants to discuss a plan that his cousin promoted in his campaign.  Fifteen armed individuals interrupted the meeting and identified themselves as members of the Revolutionary Armed Forces ("FARC"), a Marxist paramilitary organization.  Members of the FARC forcibly escorted Ussa from the meeting for an eight-hour drive into the mountains.  When they stopped, an individual who appeared to be the leader asked Ussa to name the politicians and community members with whom he had worked.  Ussa refused and was beaten.  Ussa then named several politicians and peasants.  The FARC held Ussa for four days and then left him near a mountain road.  A group of peasants took Ussa to a local hospital where he remained for two days.

Ussa also submitted several documents at his immigration hearing.  He submitted a medical record dated October 20, 1999, that states that Ussa was

treated for scrapes, bruises, and dehydration from his detention. The record does not describe the circumstances of his detention. Ussa also submitted a declaration from his cousin that stated that Ussa was his collaborator and a target of the FARC. The statement does not mention that Ussa was kidnapped, beaten, or detained.

The Immigration Judge denied Ussa's petition. The Immigration Judge found that Ussa was not credible based on Ussa's own statements and the conspicuous absence from his cousin's declaration of any mention that Ussa was kidnapped, beaten, or detained. The Immigration Judge also found significant Ussa's choice to wait ten months after obtaining his tourist visa to file his petition, even though Ussa had several opportunities to do so during that time and during his stays in United States ports while working on the cruise ship.

The Board affirmed the decision of the Immigration Judge. Like the Immigration Judge, the Board found significant the failure of Ussa's cousin to mention that Ussa was kidnapped, beaten, or detained and that Ussa neglected earlier opportunities to file his petition. The Board also found that Ussa's failure to present any evidence that the FARC targeted his cousin supported the decision.

## II. STANDARD OF REVIEW

We review only the decision of the Board, except to the extent that it expressly adopts the opinion of the Immigration Judge. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). We review legal issues de

novo, <u>Mohammed v. Ashcroft</u>, 261 F.3d 1244, 1247–48 (11th Cir. 2001), and "administrative fact findings under the highly deferential substantial evidence test," <u>Adefemi v. Ashcroft</u>, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). To reverse a factual finding, we must conclude that the record compels a contrary finding. <u>Id.</u> at 1027.

### III. DISCUSSION

Ussa argues that the Board erred when it denied Ussa's application for asylum and request for withholding of removal under the Immigration and Nationality Act, and Ussa's request for relief under the Convention Against Torture. We disagree. Substantial evidence supports the decision of the Board.

To establish asylum eligibility based on a protected ground, Ussa must establish with credible evidence "(1) past persecution on account of [his] political opinion or any other protected ground, or (2) a 'well-founded fear' that [his] political opinion or any other protected ground will cause future persecution." <u>Silva v. U.S. Att'y Gen.</u>, 448 F.3d 1229, 1236 (11th Cir. 2006). To receive asylum based on past persecution, Ussa must prove (1) that he was persecuted, and (2) that the persecution was on account of a protected ground. <u>Id.</u> To receive asylum based on a well-founded fear of future persecution, Ussa must prove (1) a "subjectively genuine and objectively reasonable" fear of persecution that is (2) on account of a protected ground. <u>Id.</u>

5

Substantial evidence supports the conclusion of the Board that Ussa did not prove past persecution because of his political opinion. Other than threatening phone calls from unidentified sources, which do not constitute persecution, see id. at 1237, the only persecution that Ussa alleges he suffered occurred when the FARC kidnapped, beat, and detained him in October 1999. The Immigration Judge found Ussa's statement about that incident incredible.

Substantial evidence supports the adverse credibility determination by the Board. Ussa attempted to corroborate his testimony with a declaration prepared by his cousin in 2002, but the declaration did not mention that Ussa had been kidnapped, beaten, or detained. The Board reasonably inferred from the conspicuous absence of any mention of these events that they did not occur. It was also reasonable to reject Ussa's explanation that his cousin omitted these events "[t]o avoid being involved in the political problems" with the FARC. Ussa's cousin was already involved in "political problems" with the FARC as a Liberal Party politician who was elected Mayor of Cucoy and campaigned for other offices.

Substantial evidence also supports the determination of the Board with respect to Ussa's alleged fear of future persecution. Ussa no longer participates in politics and offered no evidence that the FARC "retains an inclination to single [him] out for persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232

6

(11th Cir. 2005). Despite the opportunity to do so, Ussa did not seek asylum soon after he entered the United States; he waited until shortly before he received a Notice to Appear. The Immigration Judge and the Board reasonably found this conduct inconsistent with a genuine and well-founded fear of future persecution. Substantial evidence supports the denial by the Board of Ussa's application for asylum.

Our disposition of Ussa's petition regarding asylum controls our resolution of his related petition regarding withholding of removal. "To qualify for withholding of removal . . . an alien must establish standards more stringent than those for asylum eligibility . . . ." Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007). Because Ussa cannot meet the less stringent standard for asylum, his request for withholding of removal under the Immigration and Nationality Act also fails.

We do not reach Ussa's request for relief under the Convention Against Torture. Ussa did not raise the Convention as a basis for relief before the Board of Immigration Appeals. We lack jurisdiction over matters that have not been raised before the Board even if, as here, the Board has addressed them on its own initiative. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

Ussa's petition is **DENIED.**